No. 29,661.

THE KANSAS WHEAT GROWERS ASSOCIATION, *Appellant*, v. JOHN B. MARKLEY, MARVIN O. MOWERY, ABNER R. PRATHER, HOSEA LANGLEY and L. D. TABLER, as Trustees of the Farmers' Elevator Company, of Luray, *Appellees*.

(294 Pac. 885.)

Opinion filed January 10, 1931.

*T. A. Noftzger, George W. Cox, Lawrence Weigand,* all of Wichita, *G. W. Holland* and *Clifford R. Holland,* both of Russell, for the appellant.

*Oscar Ostrum* and *J. E. Driscoll,* both of Russell, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This appeal is chiefly concerned with the proper interpretation of a judgment rendered in the district court of Russell county in an action for breach of a bailment contract covering some 3,500 bushels of wheat which plaintiff had in storage with the Farmers Elevator Company, of Luray, in June, 1924. Plaintiff's wheat was not forthcoming on demand; shortly thereafter the elevator burned, and plaintiff sued the elevator company for its value. Defendant prevailed, but on appeal this court ordered judgment for the plaintiff. (*Kansas Wheat Growers Ass'n v. Farmers Elevator Co.,* 127 Kan. 27, 272 Pac. 181.) However, after that lawsuit had run its course it was discovered that it had been prosecuted against a defunct corporation, so the judgment was a practical nullity. (*Franklin v. Jennings,* 125 Kan. 553, 264 Pac. 1041.)

Some time later the present action was begun by plaintiff against the defendants as the trustees of the dissolved corporation, it being alleged that they were members of its last board of directors at the time of its dissolution. The cause of action was the same as that stated in the earlier case, and judgment was entered in plaintiff's behalf.

Execution being issued on the judgment, the sheriff was unable to locate any property belonging to the defunct corporation. Plaintiff demanded that he levy on the individual property of the defendant trustees but refused to give an indemnity bond to protect the sheriff if he should comply therewith. Consequently the sheriff applied to the district court for instructions. Counsel for plaintiff and for the sheriff appeared and the matter was heard upon evidence and argument. The court ruled that as defendants had only been sued in their representative capacity as trustees of the dissolved corporation, and not in their individual or personal capacity, the judgment had only been rendered against them as trustees and they were not liable as individuals. Plaintiff appeals, contending that the judgment for the liability of the defunct corporation was against the defendants individually.

The pertinent statute reads:

"Upon the dissolution of any corporation already created by or under the laws of this state, unless a receiver is appointed by some court of competent authority, the president and directors, or managers of the affairs of the corporation, at the time of the dissolution, by whatever name they may be known in law, shall be trustees of the creditors and stockholders of such corporation, with full power to settle the affairs, collect the outstanding debts and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; and for this purpose they may maintain or defend any judicial proceeding. (R. S. 17-808.)

"The trustees mentioned in the last section shall be severally responsible to the creditors and stockholders of such corporation, to the extent of its property and effects that shall have come into their hands." (R. S. 17-809.)

It would seem that a careful reading of this statute would have prevented this present controversy. The only concern these defendants had or have with the liabilities of the Farmers Elevator Company of Luray grows out of the fact that they were members of its board of directors at the time its charter was canceled. As such directors they became statutory trustees, *ex officio*, to take charge of its assets, collect its outstanding accounts, sue and defend

lawsuits pertaining to its business, pay its debts as far as its assets will reach, and distribute the remainder, if any, among the persons who were members or shareholders of the corporation at its dissolution. These *ex officio* trustees have no personal responsibility for the debts and liabilities of a defunct corporation. (*Bank v. Reed,* 108 Kan. 176, 178, 194 Pac. 638; 195 Pac. 599.)

Plaintiff quotes and stresses the text of the judgment roll—

"And it is further ordered, adjudged and decreed by the court, that the plaintiff have judgment against the defendant, *and each of them,* in the sum of $5,843.31, with interest at the rate of six per cent from June 8, 1925, a total sum of $7,267.81, the same to draw interest at the rate of six per cent from date of J. E. until paid and for all costs of suit.

"It is further ordered and decreed by the court that execution shall issue for the plaintiff against the defendants *and each of them* within thirty days unless said judgment be paid in full."

Standing alone, that text is a talking point, but not a good one. Judgment was rendered against "defendant and each of them." Who is the *defendant?* Who is meant by *each of them?* We have to resort to the pleadings, and if necessary, to the issues and evidence for an answer to these questions. When we turn to the pleadings the caption of plaintiff's petition indicates that the suit was against certain persons *"as trustees* of the Farmers Elevator Company of Luray, Kan., a dissolved corporation." The petition alleges the status of defendants in precisely the same representative capacity. Plaintiff's cause of action relates to its grievance against the defunct corporation. The petition alleged no grievance, no cause of action, against the *persons* who at the time happened to be *ex officio* trustees and who for that reason and none other were made defendants in this action. Plaintiff's amended petition, in part, alleged that—

"5. After the said forfeiture and dissolution of the charter of the said the Farmers Elevator Company of Luray, Kan., the property and effects of the said the Farmers Elevator Company of Luray, Kan., came into the hands of the said defendants and each of them as such trustees more than sufficient to pay all of the debts due and owing by such corporation at the time of its dissolution, as aforesaid.

"6. The said three thousand five hundred and forty-nine (3,549) bushels and ten (10) pounds of wheat which the said the Farmers Elevator Company of Luray, Kan., failed, neglected and refused to deliver to the plaintiff under the terms of the said contract, as hereinbefore alleged, upon the demand of the plaintiff made on the 8th day of June, 1925, was worth on said 8th day of June, 1925, the sum of one and 68 ½/100 dollars ($1.68½) per bushel, or the sum of five thousand nine hundred eighty and 35/100 dollars ($5,930.35), and by reason of its failure, neglect and refusal to deliver the said wheat, as afore-

said, in accordance with the said contract, the said the Elevator Company of Luray, Kan., became and was indebted before its dissolution and before the forfeiture of its charter to this plaintiff in the sum of five thousand nine hundred and eighty and 35/100 dollars ($5,980.35) with interest thereon at the rate of six per cent per annum from the 8th day of June, 1925, and no part of the said sum has been paid by it or by anyone on its behalf.

"Wherefore, this plaintiff prays that it may have an accounting from said defendants as said trustees of the property and effects of the said the Farmers Elevator Company of Luray, Kan., which came into their hands and the hands of any one of them as trustees, as aforesaid, and for judgment against the said defendants and each of them for the value of the share of this plaintiff in the said property and effects, to wit: the sum of five thousand nine hundred eighty and 35/100 dollars ($5,980.35), together with interest thereon at the rate of six per cent per annum from the 8th day of June, 1925, and for such other and further relief as may be just and equitable."

Defendants joined issue in a lengthy answer setting up the statute of limitations and other matters of no present concern.

When the cause came on for trial the parties entered into a stipulation, of which the recitals of present concern read:

"This stipulation, made and entered into by and between Noftzger & Cox and Holland & Holland as attorneys for the Kansas Wheat Growers Association, plaintiff, and by Oscar Ostrum and Jerry E. Driscoll, attorneys for the defendants, John B. Markley, Marvin O. Mowery, Abner R. Prather, Hosea Langley and L. D. Tabler *as trustees* of the Farmers Elevator Company of Luray, Kan., a dissolved corporation.

"That the following facts are admitted to be true and correct facts existing as far as it affects the above-entitled cause of action.

"Second: That on and prior to June 14, 1924, the Farmers Elevator Company of Luray, Kan., was a duly organized and existing corporation . . . that said corporation continued to so exist until it was dissolved the 31st day of December, 1925, and the charter forfeited . . . That on and prior to December 31, 1925, the defendant, John B. Markley, Marvin O. Mowery, Abner R. Prather, Hosea Langley and L. D. Tabler were directors and officers of the Farmers Elevator Company of Luray, Kan.

"Third: That on or about the 14th day of June, 1924, the plaintiff made and entered into a contract (for the storage of plaintiff's wheat) with the Farmers Elevator Company of Luray, Kan. . . .

"Fourth: That pursuant of the said contract and prior to April, 1925, the members of the plaintiff association did deliver to the elevator of the Farmers Elevator Company . . . wheat amounting to 31,917 bushels and 40 pounds of wheat for and in behalf of said plaintiff association. And . . . Farmers Elevator Company delivered to the plaintiff 28,265 bushels and 20 pounds and was allowed shrinkage of 159 bushels and 20 pounds, leaving a balance due and undelivered to the plaintiff 3,493 bushels and 10 pounds. . . .

"Seventh: That the price of wheat at Luray, Kan., after taking care of

freight and other expenses and differentials, was on the 10th day of June, 1925, worth the reasonable value of $1.67 per bushel.

"And it is further stipulated that if the plaintiff is entitled to judgment against the defendants that it would be entitled to judgment in the sum of $5,843.31, with interest at the rate of six per cent per annum from the 8th day of June, 1925."

Nothing was alleged and nothing was proved which even remotely suggested that in their capacity as trustees defendants had done or omitted any act or breach of trust which might justify the imposition of a personal judgment against them.

The cause was submitted to a jury which returned a verdict for plaintiff and made special findings of fact.

Following this verdict and special findings plaintiff filed a motion which clearly showed that the theory on which the action was begun persisted until its close—against defendants as trustees and not otherwise. It reads:

"Comes now the plaintiff and moves the court to render judgment in favor of the plaintiff and *against the defendants and each of them as trustees* of the Farmers Elevator Company of Luray, a dissolved corporation, for the sum of $5,843.31, with interest at the rate of six per cent per annum from the 8th day of June, 1925, in accordance with the verdict of the jury and the findings to the special questions made by the jury, . . ."

Judgment was rendered in plaintiff's favor on that motion, and it is therefore perfectly obvious that the ruling of the trial court in interpreting the judgment was correct.

In a cross appeal the defendant trustees assign and argue certain errors, one of which relates to the fact that by the terms of the bailment contract the plaintiff obligated itself to carry insurance. But it was no excuse for the corporate delinquency of the elevator company that its wrongdoing would not have damaged plaintiff if the latter had carried fire insurance. Indeed, no such defense was pleaded. No fire insurance company would have paid the loss, for the good reason that plaintiff could not have proved that its wheat was still in the elevator when the elevator burned. Plaintiff's cause of action was predicated on the theory that the wheat was converted and that the elevator company's liability was absolute about June 10, 1925, when it failed to deliver the wheat on demand. The elevator and its contents did not burn until July 16, 1925.

Appellees also complain of the trial court's instruction to the jury on the subject of waiver. The substance of that instruction was that following the elevator company's default on June 10, to ship

the wheat, the fact that the plaintiff kept on insisting from day to day that the wheat should be forthcoming and sent an agent to Luray to stay on the job until its demand should be complied with, was not a waiver of its rights arising from the elevator company's default on June 10. Although the first chapter of this litigation was inconclusive, the rule concerning waiver therein announced was a precise statement of pertinent law. (*Kansas Wheat Growers Ass'n v. Farmers Elevator Co.*, 127 Kan. 27, 29, 30, 272 Pac. 181), and the criticized instruction was correct.

Other matters urged in support of the cross appeal have been fully considered, but they present nothing to justify further discussion.

The judgment is affirmed in all its parts.